# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIE STOKES** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 22-0338** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                           AUGUST 9, 2022

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Willie Stokes ("Stokes"), who was recently exonerated after serving thirty-seven years in prison, commenced this civil action against several defendants, including, Assistant District Attorney John DiDonato, Esquire ("ADA DiDonato").[1]  Specifically, in his complaint, Stokes asserts various civil rights claims against ADA DiDonato under 42 U.S.C. § 1983 and Pennsylvania state law premised on ADA DiDonato's alleged role in Stokes' wrongful conviction. [ECF 1].

Presently before the Court is ADA DiDonato's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), in which ADA DiDonato moves to dismiss all the claims asserted against him, primarily on the basis of an entitlement to absolute immunity. [ECF 9].  Stokes has opposed the motion.  [ECF 13].[2]

---

[1]      In addition to ADA DiDonato, the named defendants include:  the City of Philadelphia; Nicole Brongo Kiwa Nicole Ford, as Executrix of the Estate of Detective Ernest Gilbert ("Detective Gilbert"); the Estate of Detective Lawrence Gerrard ("Detective Gerrard"); and Assistant District Attorney Robert J. Marano, Esquire ("ADA Marano") (collectively, "Defendants").

[2]      This Court has also considered ADA DiDonato's reply.  [ECF 14].

The issues raised in the underlying motion to dismiss have been fully briefed and are ripe for disposition.  For the reasons set forth herein, ADA DiDonato's motion is granted, *in part*, and denied, *in part.*

**BACKGROUND**

When ruling on a motion to dismiss, a court must accept all well-pleaded facts in the complaint as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  The facts relevant to the underlying motion to dismiss are summarized as follows:[3]

Plaintiff Stokes is a sixty-year-old former prisoner who was recently exonerated of the 1980 murder of Leslie Campbell ("Campbell").  Stokes served over thirty-seven years in custody following his conviction in August 1984.

Stokes' conviction resulted from the solicitation of false testimony from prisoner Franklin Lee ("Lee") by Detectives Gerrard and Gilbert, and the use of that false testimony at trial by ADAs Marano and DiDonato.  The facts relevant to ADA DiDonato's involvement in prosecuting and obtaining Stokes' conviction are the following:

In 1984, Lee was arrested on homicide and rape charges and faced a potential life sentence.  While being held on these charges, Lee was brought to the Police Administration Building to meet with Detectives Gilbert and Gerrard, who were investigating the cold case file of Campbell.  Detectives Gilbert and Gerrard instructed Lee to fabricate a false statement involving Stokes in Campbell's murder.  Specifically, Detectives Gilbert and Gerrard instructed Lee to testify that Stokes confessed to Campbell's murder.  In exchange for the false testimony, Detectives Gilbert and Gerrard offered Lee leniency in his own sentence.  The Detectives also arranged to bring women to Lee who would provide him with drugs and sex.  If Lee refused to testify as instructed, Detectives Gilbert and Gerrard threatened to arrange for a harsher sentence.  Lee accepted the offer and testified at Stokes' preliminary hearing that he overheard Stokes boasting about the murder of Campbell.  Lee later refused to repeat his accusation against Stokes at Stokes' trial, and recanted his earlier testimony.

Though aware that Lee's testimony was false, ADA Marano and ADA DiDonato presented Lee's testimony at Stokes' trial.  The

---

[3]     These facts are drawn from Stokes' complaint and the exhibits attached thereto.  [ECF 1].

jury convicted Stokes of murder in the first degree. Following his conviction, Stokes was sentenced to life in prison, without parole.

Immediately following Stokes' conviction, ADA Marano drafted and signed a criminal complaint charging Lee with making a false statement under oath during Stokes' preliminary hearing. ADA Marano acknowledged that Lee's false statement was a critical and material part of the prosecution against Stokes. Lee pleaded guilty to the perjury and received the maximum sentence. Thereafter, ADAs DiDonato and Marano prevented any of the paperwork associated with Lee's perjury charge and conviction from being added to Stokes' homicide file. The ADAs also instructed Philadelphia Police Department ("PPD") personnel to keep documentation of exculpatory and impeachment evidence in their exclusive possession in order to prevent the documentation from being placed in Stokes' homicide file.

In 2015, Stokes learned of Lee's perjury conviction and arranged to obtain a copy of the information and criminal docket report. On November 9, 2021, Lee testified at a *habeas* hearing that he was coerced into making the false statement. In December 2021, Stokes' petition for a writ of *habeas corpus* was granted, and all charges against him were subsequently *nolle prossed*.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) governs motions to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.D. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

ADA DiDonato seeks the dismissal of all of the civil rights claims asserted against him on the basis that he is entitled to absolute immunity. ADA DiDonato's arguments with respect to each claim are addressed separately.

### *Absolute Immunity from § 1983 Claims*

Section 1983 provides that "every person who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). Although § 1983 itself does not explicitly provide immunities from suit, the United States Supreme Court has recognized that § 1983 "was not meant 'to abolish wholesale all common-law immunities.'" *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). The Supreme Court has identified two types of immunity applicable to § 1983 claims—absolute immunity and qualified immunity.[4] *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)).

---

[4]     ADA DiDonato did not include any argument as to qualified immunity in his motion to dismiss. Accordingly, this Court will not consider the applicability of qualified immunity with regard to ADA DiDonato.

In determining whether a prosecutor is entitled to absolute immune from § 1983 liability, the court must "'focus upon the functional nature of the activities rather than [the prosecutor's] status' to determine whether absolute immunity is warranted." *Fogle*, 957 F.3d at 159 (quoting *Imbler*, 424 U.S. at 430). The functional approach entitles a prosecutor to absolute immunity for those actions that are "'intimately associated with the judicial phase of the criminal process.'" *Id.* at 160 (quoting *Imbler*, 424 U.S. at 430). Importantly, this functional approach does not entitle a prosecutor to absolute immunity for investigatory or administrative functions that "do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings . . . ." *Id.* (quoting *Buckley*, 509 U.S. at 273).[5] Determining whether a prosecutor acted as an advocate, rather than in their investigative or administrative capacity, is "a fact-specific analysis." *Id.*

### Stokes' § 1983 Malicious Prosecution Claim (Count I)

At Count I, Stokes asserts a § 1983 claim for malicious prosecution premised on Stokes' allegations that ADA DiDonato knowingly used perjured testimony at his trial resulting in the jury finding him guilty of first-degree murder. ADA DiDonato moves to dismiss this claim on the basis that he is entitled to absolute immunity. Specifically, ADA DiDonato argues that his presentation of testimony to the jury was a quintessentially advocatory act and, thus, is protected under the absolute immunity doctrine. This Court agrees.

A prosecutor is afforded absolute immunity for actions that are "'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 160 (quoting *Imbler*, 424 U.S. at 430). Those actions include, but are not limited to, a prosecutor's conduct in beginning a prosecution and a prosecutor's decision to use false testimony in connection with a prosecution. *Yarris v. Cnty. of Del.*, 465 F.3d 129, 139 (3d Cir. 2006) (quoting *Kulwicki v. Dawson*, 969 F.2d

---

[5]     Where a prosecutor is acting outside of their role as an advocate, they are only afforded qualified immunity rather than absolute. *Fogle*, 957 F.3d at 160.

1454, 1465 (3d Cir. 1992)). In *Yarris*, the United States Court of Appeals for the Third Circuit (the "Third Circuit") held that a prosecutor acts as an advocate when they use testimony after a prosecution begins. *Id.* The Third Circuit later reaffirmed this holding in *Fogle*, finding that a prosecutor's withholding of material, exculpatory evidence during the course of hearings and at trial is an activity that is "intimately associated with the judicial phase of the criminal process," and, as such, the prosecutor enjoys absolute immunity for that conduct. *Fogle*, 957 F.3d at 164 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). In conducting this fact-specific analysis, the Court must look to the functional nature of the prosecutor's actions rather than the prosecutor's title. *Id.* at 159.

Stokes alleges that ADA DiDonato knowingly used Lee's coerced, false testimony at trial to secure his (Stokes') conviction. (Compl. at ¶ 162). As alleged, ADA DiDonato's only involvement with Lee's perjured testimony occurred with his use of the false testimony at Stokes' trial. The complaint contains no allegations that ADA DiDonato participated in the solicitation or coercion of Lee's false testimony. Although ADA DiDonato was allegedly aware that Lee's testimony was false and he used that testimony in trial nonetheless, as a prosecutor, ADA DiDonato is absolutely immune from liability for using "false testimony in connection with [a] prosecution." *Yarris*, 465 F.3d at 139. Because ADA DiDonato's use of the false testimony occurred after the prosecution against Stokes had already begun and occurred in relation to the trial itself, ADA DiDonato was clearly acting within his role as an advocate. As such, ADA DiDonato is absolutely immune from liability for his knowing using of Lee's perjured testimony

at Stokes' trial.[6]   Accordingly, ADA DiDonato's motion to dismiss is granted with respect to

Stokes' § 1983 malicious prosecution claim.

### Stokes' State-Law Malicious Prosecution Claim (Count VII)

Stokes also asserts a malicious prosecution claim under Pennsylvania state law.  ADA

DiDonato moves to dismiss this claim on the basis that, like the federal malicious prosecution

claim, he is entitled to absolute immunity under Pennsylvania state law for his alleged knowing

use of perjured testimony at trial.[7]  This Court agrees.

Under Pennsylvania law, absolute immunity "'is unlimited, and exempts a high public

official from all civil suits for damages arising out of false defamatory statements . . . provided the

. . . actions are taken in the course of the official's duties or power . . . .'" *Durham v. McElynn*,

772 A.2d 68, 69 (Pa. 2001) (quoting *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952)).  The

absolute immunity standard under Pennsylvania law is the same as the federal standard.  *See Fogle*,

957 F.3d at 160 (citing *Imbler*, 424 U.S. at 430).

Because this Court has determined that ADA DiDonato is entitled to absolute immunity

from the § 1983 malicious prosecution claim for his knowing use of perjured testimony at Stokes'

trial, he is likewise immune from the state-law malicious prosecution claim.  As explained above,

ADA DiDonato's use of Lee's perjured testimony at Stokes' trial was within the scope of his role

---

[6]       Notably, Plaintiff concedes in his response that "averments related to conduct of Defendant
DiDonato at trial in front of a jury are not a basis for liability . . . [and] averments such as the one in 162,
that 'Defendants DiDonato and Marano then relied upon the coerced testimony to secure a false conviction
against Willie Stoke,' [are] not actionable against Defendant . . . ." (Pl.'s Resp., ECF 13, at pp. 21–22).

[7]       Alternatively, ADA DiDonato requests that this Court decline to exercise supplemental jurisdiction
over Stokes' state-law claim in the event this Court dismisses all of the federal claims against him.  Because
some of Stokes' federal claims against ADA DiDonato survive the underlying motion to dismiss, this Court
need not address ADA DiDonato's supplemental jurisdiction argument.  *See De Asencio v. Tyson Foods,
Inc.*, 342 F.3d 301, 309 (3d. Cir. 2003) (defining circumstances under which courts may decline to exercise
supplemental jurisdiction over pendent state-law claims).

as an advocate.  Therefore, he is entitled to absolute immunity from liability for this conduct. Accordingly, ADA DiDonato's motion is granted with respect to Stokes' state-law malicious prosecution claim.

### Stokes' § 1983 Claim for Deprivation of Liberty Without Due Process of Law (Count II)

At Count II, Stokes asserts a § 1983 claim for deprivation of liberty without due process of law.  Stokes premises this claim on ADA DiDonato's alleged participation in the fabrication of evidence used in a subsequent perjury prosecution against Lee, and ADA DiDonato's purported instruction to Philadelphia Police Department ("PPD") personnel to maintain any evidence underlying Lee's subsequent perjury prosecution in their own files rather than transferring it to Stokes' DAO file.  ADA DiDonato argues that these claims are also subject to absolute immunity. In response, Stokes argues that this conduct was not prosecutorial but rather investigatory and/or administrative and, thus, not subject to absolute immunity.

To support his due process claim premised on the fabrication of evidence, Stokes alleges that ADA DiDonato and Marano conducted their own investigation into *Lee's perjury charge* and then drafted the charging document *against Lee*.  (Compl. ECF 1, ¶¶ 132, 171).  Stokes argues that this conduct was investigatory and, thus, not subject to absolute immunity.  Stokes' argument is, however, misplaced.  While ADA DiDonato's alleged conduct with respect to the Lee perjury charge may be characterized as investigatory rather than prosecutorial, the alleged conduct occurred with respect to Lee, not Stokes.  Stokes makes no allegation that ADA DiDonato engaged in any fabrication of evidence to support charges against or the conviction of Stokes.  In the absence of any such allegation, Stokes' claims against ADA DiDonato premised on the fabrication of evidence related to Lee are without merit and dismissed.

Turning to Stokes' due process claim premised on the purported suppression of evidence, Stokes alleges that ADA DiDonato actively prevented information about Lee's subsequent perjury charge and conviction from being maintained in Stokes' homicide file.  ADA DiDonato argues that this alleged conduct is subject to absolute immunity because it occurred prior to Stokes' sentencing and while ADA DiDonato was still acting within his prosecutorial role.  In response, Stokes argues that ADA DiDonato was acting in an administrative capacity when he essentially usurped the role of office record keepers by preventing them from including information related to the Lee perjury in Stokes' file.  This Court agrees with Stokes.

As noted, the Third Circuit has held that absolute immunity applies to the acts of prosecutors during proceedings where the prosecutor is personally involved and continues his role as an advocate, but "where the role as an advocate has not yet begun . . . or where it has concluded, absolute immunity does not apply."  *Yarris*, 465 F.3d at 137 (quoting *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003)) (internal quotation marks omitted).  While the Third Circuit has rejected "bright-line rules that would treat the timing of the prosecutor's actions (*e.g.* pre- or post-indictment) . . .  as dispositive," the court has found these conditions relevant "to the extent that they bear upon the nature of the function the prosecutor is performing."  *Odd v. Malone*, 585 F.3d 202, 210 (3d Cir. 2008).

Here, Stokes alleges that ADA DiDonato circumvented the administrative record-keeping channels of the District Attorney's office ***after*** Stokes' trial and conviction.  As alleged, ADA DiDonato's instructions to PPD personnel, as well as his actions in thwarting his office's record keeping procedures, were administrative and were not undertaken in anticipation, preparation, or part of judicial proceedings. *See Yarris*, 465 F.3d at 137.  As such, ADA DiDonato is not entitled to absolute immunity at this procedural stage in the proceedings with respect to Stokes' claim for

deprivation of liberty without due process.  Therefore, Defendant's motion to dismiss is denied with respect to this claim.

### Stokes' § 1983 Civil Rights Conspiracy Claim (Count III)

Stokes also asserts a claim for conspiracy to violate his civil rights under § 1983 (Count III) premised on the same conduct underlying the § 1983 claims against ADA DiDonato.  Civil rights conspiracy claims are subject to the same absolute immunity standard as ordinary civil rights claims.  *Weimer v. Cnty. of Fayette*, 972 F.3d 177, 190 (3d Cir. 2020).  Because Stokes' conspiracy claim is premised on the same underlying conduct as his ordinary § 1983 claims addressed above, some of which is this Court has determined as prosecutorial and some of which is administrative, the conspiracy claim fares the same analysis:  To the extent the conspiracy claim is premised on ADA DiDonato's alleged use of Lee's false testimony and/or participation in the fabrication of evidence used in a subsequent perjury prosecution against Lee, Stokes' conspiracy claim is subject to absolute immunity and, therefore, dismissed; to the extent it is premised on ADA DiDonato's purported instruction of PPD personnel to maintain any evidence underlying Lee's subsequent perjury prosecution in their own files rather than transferring it to Stokes' DAO file, Stokes' conspiracy claim is not subject to the absolute immunity defense.

**CONCLUSION**

For the reasons set forth, this Court finds that:

(1) ADA DiDonato is entitled to absolute immunity for his alleged intentional use of Lee's perjured testimony at Stokes' trial, which forms the basis for Stokes' § 1983 and state-law malicious prosecution claims (Counts I and VII);

(2) ADA DiDonato is entitled to absolute immunity with respect to his alleged participation in the fabrication of evidence used in the subsequent perjury prosecution against Lee, which

partially forms the basis for Stokes' § 1983 claims for deprivation of liberty without due process (Count II) and Stokes' civil rights conspiracy related to this subject matter (Count III); and

(3) ADA DiDonato is *not* entitled to absolute immunity at this stage of the proceedings with respect to ADA DiDonato's purported instruction to PPD personnel to maintain any evidence underlying Lee's subsequent perjury prosecution in their own files rather than transferring it to Stokes' DAO file, which partially forms the basis for Stokes' § 1983 claims for deprivation of liberty without due process claim (Count II) and civil rights conspiracy (Count III).

An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.