IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIE STOKES** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 22-0338** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                          OCTOBER 31, 2022

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Willie Stokes ("Stokes"), who was recently exonerated after serving thirty-seven years in prison, commenced this civil action against several defendants, including Assistant District Attorney Robert Marano, Esquire ("ADA Marano").[1] In his complaint, Stokes asserts various civil rights claims against ADA Marano under 42 U.S.C. § 1983 and Pennsylvania state law premised on ADA Marano's alleged role in Stokes' wrongful conviction. [ECF 1].

Before the Court is ADA Marano's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), in which ADA Marano argues that all the claims asserted against him should be dismissed on the basis of absolute and/or qualified immunity. [ECF 15]. Stokes opposes the motion. [ECF 20].[2] The issues raised in the motion have been fully briefed

---

[1] In addition to ADA Marano, the named defendants include the City of Philadelphia; Nicole Brongo Kiwa Nicole Ford, as Executrix of the Estate of Detective Ernest Gilbert ("Detective Gilbert"); the Estate of Detective Lawrence Gerrard ("Detective Gerrard"); and Assistant District Attorney John DiDonato, Esquire ("ADA DiDonato") (collectively, "Defendants").

By Memorandum Opinion and Order dated August 9, 2022, this Court granted, *in part*, and denied, *in part*, ADA DiDonato's motion to dismiss the claims against him on the basis of absolute immunity. [ECF 24, 25].

[2] This Court has also considered ADA Marano's reply. [ECF 22].

and are ripe for disposition.  For the reasons set forth herein, ADA Marano's motion is granted, *in part*, and denied, *in part.*

**BACKGROUND**

When ruling on a motion to dismiss, a court must accept all well-pleaded facts in the complaint as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  The facts relevant to the underlying motion to dismiss are summarized as follows:[3]

> Plaintiff Stokes is a sixty-year-old former prisoner recently exonerated of the 1980 murder of Leslie Campbell ("Campbell").  Stokes was in custody for over thirty-seven years following his conviction in August 1984.
>
> Stokes' conviction resulted from the solicitation of false testimony from prisoner Franklin Lee ("Lee") by Detectives Gerrard and Gilbert, and the use of that false testimony at trial by ADAs Marano and DiDonato.  The facts relevant to ADA Marano's involvement in prosecuting Stokes are the following:
>
>> In 1984, Lee was arrested on homicide and rape charges.  While being held on these charges, Lee was brought to the Police Administration Building to meet with Detectives Gilbert and Gerrard, who were coincidentally investigating the cold case file of Campbell.  Detectives Gilbert and Gerrard told Lee that they were trying to "clear the books" on homicide cases and promised Lee that they would return the favor if he helped them out.
>>
>> The Detectives instructed Lee to fabricate a false statement involving Stokes in Campbell's murder.  Specifically, Detectives Gilbert and Gerrard instructed Lee to testify that Stokes confessed to Campbell's murder.  In exchange for the false testimony, Detectives Gilbert and Gerrard offered Lee leniency in his own sentence.  The Detectives also arranged to bring women to Lee who would provide him with drugs and sex.  Detectives Gilbert and Gerrard threatened to arrange for a harsher sentence if Lee refused to testify as instructed.  Lee accepted the offer and testified at Stokes' May 1984 preliminary hearing that while hanging out with Stokes one day, he heard Stokes boasting about the murder of Campbell.

---

[3] These facts are drawn from Stokes' complaint and the exhibits attached thereto, [ECF 1], as well as matters of public record from Stokes' *habeas* proceedings, *Stokes v. Lamas*, No. 20-cv-2192 (E.D. Pa.).

> On August 20, 1984, at Stokes' trial, Lee refused to repeat his accusation against Stokes and recanted his earlier testimony. He testified that his prior statement was false and that he had been threatened by Detectives Gerrard and Gilbert.
>
> Notwithstanding Lee's recantation and trial testimony, ADA DiDonato presented Lee's preliminary hearing testimony at trial in an attempt to challenge Lee's credibility. ADA DiDonato urged the jury to reject Lee's trial testimony and instead accept Lee's preliminary hearing testimony as true. On August 21, 1984, the jury convicted Stokes of murder in the first degree, and Stokes was sentenced that same day to life in prison, without parole.
>
> Days later, on August 29, 1984, ADAs Marano and DiDonato drafted a criminal complaint charging Lee with making a false statement under oath during Stokes' *preliminary hearing*. ADA Marano signed the complaint. The bill of information acknowledged that Lee's false statement was a critical and material part of the prosecution against Stokes. On January 14, 1985, Lee pleaded guilty to the perjury charge and received the maximum sentence.
>
> Thereafter, ADAs Marano and DiDonato actively prevented any of the paperwork associated with Lee's perjury charge and conviction from being added to Stokes' homicide file. ADAs Marano and DiDonato also instructed Philadelphia Police Department ("PPD") personnel to keep documentation of exculpatory and impeachment evidence in their exclusive possession in order to prevent the documentation from being placed in Stokes' homicide file with the Philadelphia District Attorney's Office ("DAO").

In 2015, Stokes learned of Lee's perjury conviction from another prisoner who had received a letter from Lee. Stokes then arranged to obtain a copy of the information and criminal docket report for Lee's prosecution. Based on this evidence, Stokes filed a petition for a writ of *habeas corpus*. On November 9, 2021, Lee testified at Stokes' *habeas* hearing that he was coerced into making the false statement.

On December 22, 2021, Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation (the "R&R"), recommending that Stokes' *habeas* petition be granted on the

3

grounds that the Commonwealth of Pennsylvania's failure to disclose exculpatory information regarding Lee's perjury charge and conviction violated *Brady v. Maryland*, 373 U.S. 83 (1963). On December 30, 2021, Judge Timothy J. Savage approved and adopted the R&R and vacated Stokes' conviction and sentence.

**LEGAL STANDARD**

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The court may also consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). When considering the allegations, exhibits, and public records, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule

4

12(b)(6), the plaintiff must allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**DISCUSSION**

In his complaint, Stokes asserts against ADA Marano various § 1983 claims, *to wit*: for claims for malicious prosecution in violation of the Fourth Amendment to the United States Constitution (Count I), deprivation of liberty without due process of law in violation of the Fourth and Fourteenth Amendments (Count II), and civil rights conspiracy (Count III), and a malicious prosecution claim under Pennsylvania state law (Count VII). ADA Marano, as one of the trial prosecutors, seeks the dismissal of all of the claims against him on the basis that he is entitled to absolute and/or qualified immunity.

Section 1983 provides that "every person who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). Although § 1983 itself does not explicitly provide immunities from suit, the United States Supreme Court has recognized that § 1983 "was not meant 'to abolish wholesale all common-law immunities.'" *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). The Supreme Court has identified two types of immunity applicable to § 1983 claims—absolute immunity and qualified immunity. *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)). ADA Marano's arguments with respect to these immunities and each claim are addressed in turn.

*Absolute Immunity*

ADA Marano argues that he is absolutely immune from all of Stokes' claims against him. In determining whether a prosecutor is entitled to absolute immunity from § 1983 liability, the court must "'focus upon the functional nature of the activities rather than [the prosecutor's] status'

to determine whether absolute immunity is warranted." *Fogle*, 957 F.3d at 159 (quoting *Imbler*, 424 U.S. at 430). The functional approach entitles a prosecutor to absolute immunity for those actions that are "'intimately associated with the judicial phase of the criminal process.'" *Id.* at 160 (quoting *Imbler*, 424 U.S. at 430). Importantly, this functional approach does not entitle a prosecutor to absolute immunity for investigatory or administrative functions that "do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings . . . ." *Id.* (quoting *Buckley*, 509 U.S. at 273).[4] Determining whether a prosecutor acted as an advocate, rather than in their investigative or administrative capacity, is "a fact-specific analysis." *Id.*

1. *Stokes' § 1983 Malicious Prosecution Claim (Count I)*

At Count I of the complaint, Stokes asserts a § 1983 claim for malicious prosecution premised on his allegations that ADA Marano relied on Lee's perjured testimony in prosecuting Stokes, resulting in the jury finding Stokes guilty of first-degree murder. ADA Marano moves to dismiss this claim on the basis that he is entitled to absolute immunity. This Court agrees.

A prosecutor is afforded absolute immunity for actions that are "'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 160 (quoting *Imbler*, 424 U.S. at 430). Those actions include, but are not limited to, a prosecutor's conduct in beginning a prosecution and a prosecutor's decision to use false testimony in connection with a prosecution. *Yarris v. Cnty. of Del.*, 465 F.3d 129, 139 (3d Cir. 2006) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992)). In *Yarris*, the United States Court of Appeals for the Third Circuit (the "Third Circuit") held that prosecutors act as advocates when they use testimony after a prosecution begins. *Id.* To conduct this fact-specific analysis, the court must look to the functional nature of the prosecutor's actions rather than the prosecutor's title. *Fogle*, 957 F.3d at 159.

---

[4] Where a prosecutor is acting outside of their role as an advocate, they may only be afforded qualified immunity rather than absolute immunity. *Fogle*, 957 F.3d at 160.

Stokes alleges that ADA Marano relied on Lee's coerced testimony to secure Stokes' conviction. As alleged, ADA Marano's only involvement with Lee's perjured testimony occurred in connection with Stokes' trial and the preparation and signing of the criminal complaint against Lee. Stokes' complaint contains no allegations that ADA Marano participated in the solicitation or coercion of Lee's false testimony. Although ADA Marano was allegedly aware that Lee's testimony was false and used that testimony in trial, as a prosecutor, ADA Marano is absolutely immune from liability for using "false testimony in connection with [a] prosecution." *Yarris*, 465 F.3d at 139. Because ADA Marano's use of the false testimony occurred after the prosecution against Stokes had already begun and occurred in relation to the trial itself, ADA Marano was clearly acting within his role as an advocate. As such, under existing precedent, ADA Marano is absolutely immune from liability for knowingly using Lee's perjured testimony at Stokes' trial.[5] Accordingly, ADA Marano's motion to dismiss is granted with respect to Stokes' § 1983 malicious prosecution claim.

*2. Stokes' State-Law Malicious Prosecution Claim (Count VII)*

Stokes also asserts a malicious prosecution claim under Pennsylvania state law. ADA Marano moves to dismiss this claim on the basis that, like the federal malicious prosecution claim, he is entitled to absolute immunity under Pennsylvania state law. This Court agrees.

The absolute immunity standard under Pennsylvania law is "similar" to the federal standard. *See Gregg v. Pettit*, 2009 WL 57118, at *7 (W.D. Pa. Jan. 8, 2009) (citing *Durham v. McElynn*, 772 A.2d 68 (Pa. 2001)). In *Durham*, the Pennsylvania Supreme Court affirmed the

---

[5] Notably, Plaintiff conceded in his response to ADA DiDonato's motion to dismiss that "averments such as the one in [¶] 162 [of the complaint], that 'Defendants DiDonato and Marano then relied upon the coerced testimony to secure a false conviction against Willie Stokes,' [are] not actionable against Defendant [DiDonato] . . . ." (Pl.'s Resp., ECF 13, at pp. 21–22). Plaintiff makes the same allegations against ADA Marano with respect to Count I as he does against ADA DiDonato.

7

lower court's decision that an assistant district attorney was entitled to absolute immunity for allegedly using perjured testimony at a preliminary hearing and trial. *Durham*, 772 A.2d at 69, 70. The court noted that the scope of absolute immunity in Pennsylvania is virtually "unlimited" and protects officials from liability "from suits seeking damages for actions taken . . . in the course of their official duties.'" *See id.* at 69 (quoting *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952)).

Just as this Court has determined that ADA Marano is entitled to absolute immunity from the § 1983 malicious prosecution claim for knowingly using perjured testimony at Stokes' trial, he is likewise immune from the state-law malicious prosecution claim. As explained above, ADA Marano's reliance on Lee's perjured testimony to prosecute Stokes was within the scope of his role as an advocate. Therefore, he is entitled to absolute immunity from liability for this conduct. *See Durham*, 772 A.2d at 70. Accordingly, ADA Marano's motion is granted with respect to Stokes' state-law malicious prosecution claim.

### 3. Stokes' § 1983 Claim for Deprivation of Liberty Without Due Process of Law (Count II)

At Count II of the complaint, Stokes asserts a § 1983 claim for deprivation of liberty without due process of law. Stokes premises this claim on ADA Marano's alleged participation in the fabrication of evidence used in the subsequent perjury prosecution of Lee, and ADA Marano's purported instruction to Philadelphia Police Department ("PPD") personnel to maintain any evidence underlying Lee's perjury prosecution in their own files rather than transferring it to Stokes' DAO file. ADA Marano argues that these claims are also subject to absolute immunity, incorporating the arguments made by ADA DiDonato in his own motion to dismiss a similar claim against him. In response, Stokes argues, as he did in response to ADA DiDonato's motion, that this conduct was not prosecutorial but rather investigatory and/or administrative and, thus, not subject to absolute immunity.

To support his due process claim premised on the fabrication of evidence, Stokes alleges that ADAs Marano and DiDonato conducted their own investigation into *Lee's perjury* and then drafted the charging document *against Lee*. Stokes argues that this conduct was investigatory and, thus, not subject to absolute immunity. Stokes' argument, however, is misplaced. While ADA Marano's alleged conduct with respect to the Lee perjury charge may be characterized as investigatory rather than prosecutorial, the alleged conduct occurred not with Stokes, but rather with respect to Lee. Stokes makes no allegation that ADA Marano engaged in any fabrication of evidence to support charges against Stokes or Stokes' conviction. In the absence of any such allegation, Stokes' claims against ADA Marano premised on the fabrication of evidence related to Lee are without merit and, therefore, are dismissed.

As to Stokes' due process claim premised on the purported suppression of evidence, Stokes alleges that ADA Marano actively prevented information about Lee's perjury charge and conviction from being maintained in Stokes' homicide file. ADA Marano argues that this alleged conduct is subject to absolute immunity because ADA Marano was still acting within his prosecutorial role. In response, Stokes disagrees and argues that ADA Marano was acting in an administrative capacity when he essentially usurped the role of the office record keepers by preventing them from including information related to the Lee perjury in Stokes' file. This Court agrees with Stokes.

As noted, absolute immunity applies to the acts of prosecutors during proceedings where the prosecutor is personally involved and continues his role as an advocate, but "where the role as an advocate has not yet begun . . . or where it has concluded, absolute immunity does not apply." *Yarris*, 465 F.3d at 137 (quoting *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003)) (internal quotation marks omitted). While the Third Circuit has rejected "bright-line rules that

would treat the timing of the prosecutor's actions (*e.g.* pre- or post-indictment) . . . as dispositive," the Third Circuit has found these conditions relevant "to the extent that they bear upon the nature of the function the prosecutor is performing." *Odd v. Malone*, 585 F.3d 202, 210 (3d Cir. 2008).

Stokes alleges that ADA Marano circumvented the administrative record-keeping channels of the District Attorney's office ***after*** Stokes' trial and conviction. As alleged, ADA Marano's instruction to PPD personnel, as well as his actions in thwarting his office's record keeping procedures, were administrative in nature, and were not undertaken in anticipation, in preparation, or as part of judicial proceedings. *See Yarris*, 465 F.3d at 137. As such, ADA Marano is not entitled to absolute immunity, at this procedural stage in the proceedings, with respect to Stokes' claim for deprivation of liberty without due process.

### 4. Stokes' § 1983 Civil Rights Conspiracy Claim (Count III)

Stokes also asserts a claim for conspiracy to violate his civil rights under § 1983 premised on the same conduct underlying the § 1983 claims against ADAs Marano and DiDonato. This Court already addressed ADA DiDonato's motion to dismiss the conspiracy claim against him, finding that ADA DiDonato is entitled to absolute immunity with respect to his alleged use of Lee's false testimony and/or participation in the fabrication of evidence used in Lee's perjury prosecution, but not with respect to his purported instruction of PPD personnel to maintain any evidence underlying Lee's subsequent perjury prosecution in their own files rather than transferring it to Stokes' DAO file. The same reasoning applies here.

Courts apply the same absolute immunity standard to civil rights conspiracy claims as to ordinary civil rights claims. *See Weimer v. Cnty. of Fayette*, 972 F.3d 177, 190 (3d Cir. 2020) (affirming dismissal of civil rights conspiracy claim along with other § 1983 claims based on the same underlying conduct). Stokes' conspiracy claim against ADA Marano is premised on the

same underlying conduct as his other § 1983 claims addressed above, some of which this Court has determined is prosecutorial and some of which is administrative. As such, the conspiracy claim fares the same: To the extent the conspiracy claim is premised on ADAs Marano's alleged use of Lee's false testimony and/or participation in the fabrication of evidence used in Lee's perjury prosecution, Stokes' conspiracy claim is subject to absolute immunity and, therefore, dismissed. However, to the extent his claim is premised on ADA Marano's purported instruction of PPD personnel to maintain any evidence underlying Lee's prosecution in their own files rather than transferring it to Stokes' DAO file, ADA Marano is not entitled to absolute immunity.

### *Qualified Immunity*

ADA Marano argues that even if he is not entitled to absolute immunity, he is, alternatively, entitled to qualified immunity. As noted, this Court has determined that ADA Marano is not entitled to absolute immunity, at this stage of the proceedings, for Stokes' § 1983 claims for deprivation of liberty without due process (Count II) and civil rights conspiracy (Count III) to the extent they are based on ADA Marano's alleged instruction to PPD personnel to maintain evidence of Lee's perjury prosecution in their own files, rather than transferring it to Stokes' DAO file.

This Court will now consider whether ADA Marano is entitled to qualified immunity with respect to this conduct. "Prosecutors who are not entitled to absolute immunity from a plaintiff's claims may nonetheless be entitled to qualified immunity from those same claims." *Yarris*, 465 F.3d at 139. Under the doctrine of qualified immunity, certain officials performing "discretionary functions" are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) ("An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or

constitutional right that was 'clearly established' at the time of the challenged conduct."). Qualified immunity protects from suit "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To determine whether a defendant is entitled to qualified immunity, a court must consider: (1) whether the defendant violated a constitutional right; and (2) whether the right was clearly established, such that it would have been clear to a reasonable person that the conduct was unlawful under the circumstances. *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). These questions may be answered in either order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). In making this determination, the court must view the facts "in the light most favorable to the party asserting the injury." *Scott v. Harris*, 550 U.S. 372, 377 (2007). The defendant seeking to invoke qualified immunity bears the burden of showing its applicability. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014) (citing *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010)).

"Clearly established" means that "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, — U.S. —, 138 S. Ct. 577, 589 (2018) (internal quotations and citation omitted). For qualified immunity purposes, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals." *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (internal quotations and citation omitted). In determining whether the alleged right was clearly established at the relevant time, there does not need to be "a case on point, but existing precedent must have placed the statutory or constitutional question beyond debate."

12

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  The court does not need to find that the very conduct at issue was previously held unlawful; rather, a court must "conclude that the firmly settled state of the law, established by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015) (citations omitted).  This Court must keep in mind the Supreme Court's repeated directives "not to define clearly established law at a high level of generality" but, instead, conduct this analysis "in light of the specific context of the case." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation marks omitted).

While qualified immunity "'should be considered at the earliest possible state, a genuine issue of material fact may preclude' dismissal on qualified immunity." *Womack v. Smith*, 2009 WL 5214966, at *4 (M.D. Pa. 2009) (citing *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002)).  "Qualified immunity shall be upheld on a 12(b)(6) motion only when the defense is established on the face of the complaint." *Id.* (internal quotations and citation omitted); *see also Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (cautioning "that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases").

Here, ADA Marano's qualified immunity argument is directed *solely* at the second question of the analysis, *i.e.*, whether Stokes had a "clearly established" right to the disclosure of evidence regarding Lee's perjury charge and conviction at the time ADA Marano purportedly directed PPD personnel not to transfer that information to Stokes' DAO file, such that it would have been clear to a reasonable person that the conduct was unlawful under the circumstances.  In his motion to dismiss, ADA Marano argues that Stokes had no "clearly established" right to the disclosure at

13

issue because a due diligence exception to *Brady arguably* applied at that time. Stokes contends that the exception clearly did not apply.

In the landmark *Brady v. Maryland* decision in 1963, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "[T]he defendant's reasonable expectation that the government will comply with *Brady* does not evaporate upon conviction or after trial. Rather, unless and until there are reasons to think otherwise, that reasonable expectation continues past trial, into postconviction proceedings and beyond." *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 293 (3d Cir. 2021) (internal citations and quotations omitted); *see also Imbler v. Pachtman*, 424 U.S. 409, 427 n.25 (1976) ("[A]fter a conviction the prosecutor also is bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction.").

In 1984, the Third Circuit concluded that *Brady* did not obligate prosecutors "to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984) (citation omitted).[6] *Starusko* was decided in March of 1984—before ADA Marano purportedly instructed the PPD to withhold the information regarding Lee's perjury prosecution from Stokes' DAO file. As such, *Starusko* and the due diligence exception were good law and the governing law in this Circuit at the time of ADA Marano's challenged conduct. *See Munchinski v. Solomon*, 747 F. App'x 52, 62 (3d Cir. 2018) (noting that the due diligence requirement applied in 1992, at the time of the alleged conduct,

---

[6] In 2016, the Third Circuit explained that the post-*Starusko* case law regarding the due diligence exception had been "inconsistent" and held that "the concept of 'due diligence' plays no role in the *Brady* analysis." *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 291 (3d Cir. 2016).

14

in considering whether prosecutors had qualified immunity and affirming denial of a policy officer's invocation of qualified immunity at summary judgment). Therefore, the qualified immunity analysis involves determining whether the defendant violated a right that was "clearly established" at the time of the challenged conduct. *Plumhoff*, 572 U.S. at 778.

In his motion, ADA Marano argues that Stokes' right to the evidence of Lee's perjury charge and conviction was not clearly established because the due diligence exception to *Brady* applied.[7] ADA Marano is mistaken. Applying the governing law at the time, ADA Marano would have violated clearly established law for directing the PPD to withhold the evidence of Lee's perjury charge and prosecution from Stokes' DAO file—and is, therefore, not entitled to qualified immunity—only if a reasonable prosecutor would have understood that Stokes (1) did not already have the evidence and (2) could not have discovered it himself through reasonable diligence. *See Munchinski*, 747 F. App'x at 62. As discussed further below, it is unclear on the face of the complaint whether due diligence would have revealed the facts of Lee's perjury charge and conviction.

In his motion, ADA Marano contends that Stokes was already aware that Lee had committed perjury at the time of ADA Marano's instruction to the PPD, since Lee admitted at Stokes' trial that he had lied at the preliminary hearing. In rebuttal, Stokes argues that it was not the fact that Lee lied at the preliminary hearing that is pertinent here but, rather, ADA Marano's "own knowledge and participation in developing a charge against Mr. Lee for that act, and the

---

[7] ADA Marano also contends that Stokes had no clearly established right to the information at issue because "[t]he addition of the criminal charge to these facts would not have [] had evidentiary value." (Def.'s Br., ECF 15-1, at p. 13). ADA Marano argues that the charge would not have been valuable to Stokes because he would not have been permitted to use it under Pennsylvania Rule of Evidence 608, which governs the use of extrinsic evidence for impeachment purposes. This admissibility argument is misplaced. Based on the facts alleged, the withheld evidence of Lee's perjury charge and conviction was arguably unknown to Stokes at the time and potentially material to Stokes' appellate, post-conviction, and *habeas* proceedings, which are not subject to the Pennsylvania Rules of Evidence.

subsequent judicial determination that such act did, in fact, constitute perjury." (Pl.'s Resp., ECF 20, at p. 22). Based on the facts alleged in the complaint, though Stokes was aware that Lee had lied at the preliminary hearing, he was not aware that Lee had been charged with and convicted of perjury until the year 2015. Clearly, there is a meaningful distinction in the arguments, at this stage of the proceedings, particularly in light of ADA DiDonato's argument at Stokes' trial that the jury should reject Lee's recantation of his preliminary hearing testimony on the basis that his earlier testimony was more credible. (Compl., ECF 1, ¶¶ 55–56). It appears the jury did just that, discrediting the recanted testimony and finding Stokes guilty of murder. Based on this alleged course of events, the fact that Lee had been charged with and convicted of perjury *for his preliminary hearing statement* could have been valuable to Stokes during his post-conviction and *habeas* proceedings. Thus, this Court cannot conclude, at this stage, that Stokes was already aware of the evidence at issue.

Under the *Starusko* due diligence analysis, this Court must also determine whether Stokes could have obtained "the essential facts permitting him to take advantage of" the evidence of Lee's perjury charge and conviction through reasonable diligence. *See Starusko*, 729 F.2d at 262. In his complaint, Stokes alleges that he did not discover the evidence of Lee's perjury prosecution until the year 2015 from another prisoner whom Lee had contacted, despite spending decades working on his own appellate and post-conviction proceedings. (Compl., ECF 1, ¶¶ 83–85). Notably, when addressing Stokes' *habeas* petition, Magistrate Judge Moore Wells concluded that Stokes "lacked access to Mr. Lee's criminal docket, and hence, the perjury conviction could not have been discovered by his exercise of due diligence." Doc. 28, at p. 13, *Stokes v. Lamas*, 20-cv-2192. These alleged facts and the public records involved raise questions of fact as to whether Stokes could have obtained the perjury charge and conviction through reasonable diligence. As such, this

Court finds that there are genuine issues of material fact as to whether a reasonable prosecutor in ADA Marano's position in 1984 would have believed that the due diligence exception to *Brady* applied and whether Stokes' right was "clearly established." *See Lamont*, 637 F.3d at 182.

Because genuine issues of material fact exist, at this stage of the litigation, ADA Marano is not entitled to qualified immunity for his alleged instruction to PPD personnel to maintain evidence of Lee's perjury prosecution in their own files rather than transferring it to Stokes' DAO file. *See Womack*, 2009 WL 5214966, at *4 ("Qualified immunity shall be upheld on a 12(b)(6) motion only when the defense is established on the face of the complaint."). The motion to dismiss is, therefore, denied as to Counts II and III, to the extent these claims are premised on this alleged conduct.

**CONCLUSION**

For the reasons set forth, this Court finds that:

(1) As to Stokes' § 1983 and state-law malicious prosecution claims (Counts I and VII), ADA Marano is entitled to absolute immunity for his alleged intentional use of Lee's perjured testimony at Stokes' trial;

(2) as to Stokes' § 1983 claims for deprivation of liberty without due process (Count II) and Stokes' civil rights conspiracy related to this subject matter (Count III), ADA Marano is entitled to absolute immunity with respect to his alleged participation in the fabrication of evidence used in the subsequent perjury prosecution against Lee; and

(3) as to Stokes' § 1983 claims for deprivation of liberty without due process claim (Count II) and civil rights conspiracy (Count III), ADA Marano is *not* entitled to absolute *or* qualified immunity, at this stage of the proceedings, with respect to his purported instruction to PPD

personnel to maintain any evidence underlying Lee's subsequent perjury prosecution in their own files rather than transferring it to Stokes' DAO file.

An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.